## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DAHIANNA TORRES, *et al.*, | ) | Case No. 1:19-cv-1501 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | William H. Baughman, Jr. |
| DINO PALMIERI SALONS, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

In this action alleging improper pay practices, the Court previously granted conditional certification of Plaintiffs' collective action claims. Plaintiffs now seek certification of five classes under Rule 23, and Defendants move to strike certain evidentiary materials from the record on class certification. For the reasons that follow, the Court **DENIES** Defendants' motion to strike and **DENIES** Plaintiffs' motion for class certification.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Dahianna Torres, Dena Marinelli, Katie Kauble, and Alison Haseley, trainees at Dino Palmieri Salons, filed suit alleging that their employer and its principal violated federal and State law through various pay practices. (*See generally* ECF No. 52.)

### A.    The First Amended Complaint

In the first amended complaint, Plaintiffs challenge various pay practices and policies of Defendants.

### A.1.   Plaintiffs' Factual Allegations

Factually, Plaintiffs' allegations fall into three broad categories.

*Training Classes.*  Plaintiffs allege that Defendants failed to pay them for mandatory training classes.  (*Id.*, ¶ 21, PageID #748.)  These classes lasted around six or eight hours each and took place one day per week over twelve weeks.  (*Id.*, ¶¶ 23, 24.)  Substantively, the trainees learned specific techniques they were expected to use during their employment with Dino Palmieri Salons.  (*Id.*, ¶ 28, PageID #749.)  In addition to the training classes, Plaintiffs worked up to twenty-nine hours per week as assistants in salons.  (*Id.*, ¶ 31.)  Plaintiffs Torres and Kauble claim that they received no pay from Defendants for the time spent in the mandatory training classes pursuant to a policy Defendants maintained since at least 2015.  (*Id.*, ¶¶ 33, 34.)  Defendants allegedly promised trainees they would receive a bonus upon completing the training program and a second bonus after ninety days of employment.  (*Id.*, ¶¶ 56 & 57, PageID #752.)  Although keyed to certain employment milestones, Plaintiffs allege that Defendants intended these bonuses to cover minimum wage and overtime owed to employees.  (*Id.*, ¶¶ 58–61.)

*Pay Deductions.*  Additionally, Plaintiffs claim that Defendants deducted $1.00 per week from the pay of trainees—a practice which dropped their pay below the minimum wage.  (*Id.*, ¶ 37, PageID #750.)  According to Plaintiffs this education fee ran counter to their employment contracts, under which Defendants agreed to provide education without charge.  (*Id.*, ¶ 38.)  Plaintiffs Kauble, Marinelli, and Haseley were employed as stylists and allege that, if they did not sell sufficient

2

amounts of products and services, Defendants deducted that amount from their paychecks. (*Id.*, ¶ 40.) They claim this deduction also reduced their pay below the minimum wage. (*Id.*, ¶ 42.)

*Commissions*. Plaintiffs allege that those stylists who were paid on commission were underpaid through the method by which Defendants calculated the commissions. (*Id.*, ¶ 43.) According to the first amended complaint, Defendants created a commission-payment structure to induce stylists to choose this method of compensation. (*Id.*, ¶ 44.) Under the commission structure, Defendants paid stylists based on a net price charged to customers (*id.*), which deducted from the gross charge the actual costs of materials and supplies used for the service (*id.*, ¶ 45, PageID #750–51.) As one example, for hair coloring, the commission was based on the amount of the sale less the cost of supplies, not the full amount the customer paid. (*Id.*, ¶ 46, PageID #751.) Defendants led Plaintiffs to believe that the net amount used to pay commissions were based on actual costs. (*Id.*, ¶ 50.) But Plaintiffs allege that Defendants made no effort to determine the actual cost of the materials and supplies used, such that the net amount on which Defendants paid commissions was wholly arbitrary and "always more than the actual cost of supplies" to lower the commission paid. (*Id.*, ¶ 51; *see also id.*, ¶¶ 48 & 52.)

### A.2.  Factual Allegations Relating to Class Certification

In a section of the first amended complaint titled "Class Action Facts," Plaintiffs identify five putative classes. (*Id.*, ¶¶ 76 & 69 [*sic*], PageID #755.) Plaintiffs plead that Defendants have ten stores, each with a double-digit number of employees,

such that the number of putative class members exceeds 300. (*Id.*, ¶ 72, PageID #756.)

### A.3.   Plaintiffs' Causes of Action

Based on these alleged facts, Plaintiffs assert six causes of action against Dino Palmieri Salons and Dino Palmieri himself.  In Count I, Plaintiffs allege violations of the Fair Labor Standards Act.  (*Id.*, ¶¶ 74–79, PageID #756–57.)  In Counts II, III, and VI, Plaintiffs allege violations of various Ohio statutes relating to employee pay. (*Id.*, ¶¶ 80–90, PageID #757–58; *id.*, ¶¶ 123–27, PageID #761–62.)  Count IV alleges fraud (*id.*, ¶¶ 91–115, PageID #758–61), and Count V alleges breach of contract (*id.*, ¶¶ 116–22, PageID #761).

### B.   Motion for Class Certification

Plaintiffs move for certification of the following five classes:

**The Minimum Wage Prompt Pay Class:** All current and former Dino Palmieri Salons, Inc. employees, who as a result of failing to pay minimum wage for all hours worked and/or other consideration and were not promptly paid in violation of Ohio law, as set forth in Count II of Plaintiffs' Amended Complaint (hereinafter, "The Minimum Wage Prompt Pay Class").

**The Prompt Pay Class:** All former and current employees at Dino Palmieri Salons, Inc., who in violation of Ohio law, had deductions taken from their pay, in violation of Ohio law, as set forth in Count III of Plaintiffs' Amended Complaint (hereinafter, "The Prompt Pay Class").

**The Fraud Claim Class:** All current and former employees of Dino Palmieri Salons, Inc. who were defrauded by being promised cash bonuses for employment milestones and/or were defrauded by false representations as to how their commissions would be based and/or were defrauded by false representatives that employees were being paid for hours actually worked during a pay period, as set forth in Count IV of Plaintiffs' Amended Complaint (hereinafter, "The Fraud Claim Class").

**The Breach of Contract Class:** All former and current employees of Dino Palmieri Salons, Inc. who, in breach of their agreement with Dino Palmieri Salons, Inc., were not actually paid bonuses for milestones and/or were not paid commission on net sales as promised by Dino Palmieri Salons, Inc., as set forth in Count V of Plaintiffs' Amended Complaint (hereinafter, "The Breach of Contract Class").

**The Company Shop Class:** All former and current employees at Dino Palmieri Salons, Inc., who were forced to purchase goods and supplies from their employer, at higher prices than the reasonable and current market value of such goods and supplies through the commission structure, as set forth in Count VI of Plaintiffs' Amended Complaint (hereinafter, "The Company Shop Class").

(ECF No. 54, PageID #783–84.)

## C.     Evidentiary Record on Class Certification

Plaintiffs' motion does not contain a statement of facts or reference a record in seeking class certification.  (*See, e.g.*, *id.*, PageID #793.)  Instead, Plaintiffs argue for certification largely by reference to the facts pleaded in the first amended complaint, with one exception.  (*See, e.g.*, *id.*.)  (More accurately, Plaintiffs reference the proposed first amended complaint filed at ECF No. 40-2 as an exhibit to their motion for leave to amend.  The Court references the first amended complaint filed at ECF No. 52 after leave to amend was granted.)

### C.1.    Affidavit of Shana Fry-Izworsky

The one exception is the affidavit of Shana Fry-Izworsky, a manager at one location of Dino Palmieri Salons from April 2012 to January 2015.  (ECF No. 54-1, ¶¶ 2, 3, PageID #811.)  Fry-Izworsky returned to Dino Palmieri in April 2016 and had broader management and operations responsibilities that included employee payroll through August 2018.  (*Id.*, ¶¶ 6, 7.)  In her affidavit, Fry-Izworsky provides the

5

following facts relating to these classes and the allegations of the first amended complaint.

*Training Classes.*  Fry-Izworsky swears that every new employee hired to become a stylist "with a very few exception" was paid minimum wage, had to attend without pay the mandatory training classes that lasted six to eight hours each, and as a result was paid less than the minimum wage.  (*Id.*, ¶ 9, PageID #812.)

*Pay Deductions.*  She swears that Dino Palmieri Salons deducted $1.00 from every stylist during each two-week pay period, which caused those stylists earning minimum wage to fall below that wage floor during the pay period.  (*Id.*, ¶ 10.)  Further, Fry-Izworsky states that tips collected by stylists earning minimum wage "were only claimed on a monthly basis" such that these stylists earned less than the minimum wage for one of the two pay periods each month.  (*Id.*)

*Commissions.*  Fry-Izworsky's affidavit provides no information regarding the first amended complaint's allegations about commissions.

However, it identifies two additional practices by which Dino Palmieri Salons underpaid employees.  First, Fry-Izworsky swears that Dino Palmieri Salons had a policy or practice of limiting the hours recorded for an employee or stylist to no more than 50% of the service revenue each generated.  (*Id.*, ¶ 11; *see also* ECF No. 40-1, ¶¶ 11–12, PageID #645.)  For example, if a stylist worked 29 hours and generated $400 in service revenue, the compensation cap under this policy would be $200, which divided by an hourly rate of $8.30 equals 24.10 hours worked.  (ECF No. 54-1, ¶ 12, PageID #812.)  In her affidavit, Fry-Izworsky states that managers reduced those 29

hours in the example to 24.10 by adding breaks or otherwise changing time records. (*Id.*, ¶¶ 11, 12.)  In other words, "employees routinely worked more hours than what was paid."  (*Id.*, ¶ 11.)  She identifies a particular "computer program and time system" that documented each such change.  (*Id.*, ¶ 13.)

Second, she identifies a policy under which employees who forgot to clock in were not paid for a shift.  (*Id.*, ¶ 14, PageID #813; *see also* ECF No. 40-1, ¶ 14, PageID #646.)  Further, she swears that Dino Palmieri Salons did not consider employees to be working until their first appointment arrived at a salon.  (*Id.*)

### C.2.  Defendants' Evidence

In opposing Plaintiffs' motion for class certification, Defendants supplied several items for the record.

### C.2.a. Third Declaration of Shana Fry-Izworsky

First, Defendants submitted a declaration from Fry-Izworsky.  (ECF No. 61-1.) In her declaration, Fry-Izworsky clarified certain points contained in her affidavit on which Plaintiffs rely.  For context, this declaration references two earlier declarations Fry-Izworsky executed, one on February 14, 2019 (ECF No. 6-5) and the other on March 19, 2020 (ECF No. 40-1.)  In her first declaration, Fry-Izworsky described an industry conference she attended in 2016 with a high-ranking member of Dino Palmieri Salons.  (ECF No. 6-5, ¶ 10, PageID #68.)

*Training Classes*.  At that conference, there was discussion that the law required salons to pay trainees for training classes.  (*Id.*)  In her declaration for Defendants, Fry-Izworsky swears that training was not mandatory.  (ECF No. 61-1, ¶ 3, PageID #867.)  When trainees missed classes, they were not required to make

them up.  (*Id.*)  Also, trainees had the option to obtain similar training elsewhere at their own cost.  (*Id.*)  Training classes were not a condition of employment (*id.*), but they were "an intense, valuable program," and similar programs cost as much as $3,000 (*id.*, PageID #868).  After the industry conference Fry-Izworsky referenced in her initial declaration, Dino Palmieri Salons began compensating trainees who completed the training program for the time they spent in it.  (*Id.*, PageID #867; *see also id.*, ¶ 6, PageID #869.)

*Pay Deductions.*  Defendants had safeguards in their computer system to ensure that employees received at least minimum wage.  (*Id.*, ¶3, PageID #868.)  Fry-Izworsky confirmed that Dino Palmieri Salons deducted $1.00 from trainees' paychecks.  (*Id.*, PageID #868.)  In this regard, Fry-Izworsky's declaration contradicts the first amended complaint, which alleges a deduction of $1.00 per week, not per biweekly pay period.  (*See* ECF No. 52, ¶ 37, PageID #750.)  Fry-Izworsky identified a deduction of $3.00 per paycheck for ongoing training to comply with State continuing education requirements for stylists to maintain their licenses.  (ECF No. 61-1, ¶ 3, PageID #868.)

Regarding product chargebacks, when stylists failed to make sufficient retail sales, Fry-Izworsky clarifies that these deductions did not apply to hourly employees, only those on commission.  (*Id.*)  Even then, Dino Palmieri Salons did not consistently engage in this practice (*id.*) and discontinued it by 2017 (*id.*, PageID #869).  Fry-Izworsky reiterates that Dino Palmieri Salons had safeguards in place to ensure that chargebacks did not drop employees below the minimum wage.  (*Id.*)

*Commissions*.  Fry-Izworsky confirms that stylists paid by commission were compensated on the basis of net sales.  (*Id.*, ¶ 8, PageID #870.)  Also, she swears that stylists had no requirement to purchase any products from Dino Palmieri Salons, but received a substantial discount if they did so.  (*Id.*, ¶ 9, PageID #871.)

With respect to the cap on service revenue discussed in her affidavit, Fry-Izworsky clarified that the 50% cap was not mandatory and applied only to hourly stylists, not those on commission, as one compensation option.  (*Id.*, ¶ 6, PageID #869.)  Further, she disclaimed knowledge of any stylist whose compensation fell below the minimum wage as a result of this practice.  (*Id.*, PageID #870.)  Although her affidavit identifies a specific computer system that tracked the changes to paychecks this practice generated, she swears that Dino Palmieri Salons stopped using this program in 2017.  (*Id.*)  As for documentation to adjust employee hours based on clocking in, Fry-Izworsky states that Dino Palmieri Salons only ever adjusted hours upward, not down.  (*Id.*)

As a general matter, Fry-Izworsky declares that, when preparing her affidavit on which Plaintiffs rely, counsel told her to disregard tips.  (*Id.*, ¶ 3, PageID #868.)  Counting tips, Fry-Izworsky states that every employee of Dino Palmieri Salons made more than minimum wage.  (*Id.*)

Fry-Izworsky declares that she "signed my second affidavit while I was under the influence of alcohol (i.e., drunk) and items were omitted" that she clarifies in this third declaration.  (*Id.*, ¶ 7.)

### C.2.b. Defendants' Other Evidence

Defendants also attach to the opposition (part of) a declaration from Melodie Laird, but do not discuss that declaration in their memorandum.  (ECF No. 61-2.) They attach three separate lists identifying a total of 57 employees, with no explanation of who these employees are.  (ECF No. 61-3; ECF No. 61-4; ECF No. 61-5.) Finally, Defendants attach two one-page documents of what appear to be excerpts of an employee manual or policies relating to employee discounts (ECF No. 61-6) and commissions (ECF No. 61-7).  Again, this information is not discussed in Defendants' brief.

### C.3.    Evidence Submitted with Plaintiffs' Reply

In connection with their reply, Plaintiffs submit excerpts from the transcript of the deposition Fry-Izworsky taken on July 24, 2020, after Plaintiffs moved for class certification and after Defendants opposed.  Fry-Izworsky testified that Defendants' counsel drafted the declaration that they submitted in opposing Plaintiffs' motion for class certification, though personnel at Dino Palmieri Salons refreshed her recollection on a few points.  (ECF No. 75-1, PageID #1030–31.)  One page of the excerpts includes testimony from Fry-Izworsky that she does not want to ruin Dino Palmieri through the lawsuit, which Plaintiffs offer as a reason she might provide contradictory declarations.  (*Id.*, PageID #1029 & 1032.)

### D.    Defendants' Motion to Strike

Defendants move to strike "all allegations of minimum wage violations" in Fry-Izworsky's first two declarations (ECF Nos. 6-5 & 40-1), but not her affidavit.  (ECF No. 79, PageID #1070.)  As grounds for the motion, Defendants argue that Fry-

Izworsky's first two declarations are inadmissible because its allegations are "ultimate facts and conclusions of law." (*Id.*)  Also, because she is not a lawyer, Fry-Izworsky lacks personal knowledge whether employees fell below the minimum wage. (*Id.*)  Although Defendants direct their motion to the affidavit of Fry-Izworsky, they do not seek to strike the excerpts from her deposition Plaintiffs submitted with their reply.  To the contrary, Defendants rely on it.  (*Id.*, PageID #1071.)

### E.    Plaintiffs' Evidentiary Supplement

Following the deposition of Nancy Haimes, the chief financial officer of Dino Palmieri Salons, Plaintiffs submitted her testimony in support of their motion for class certification.  (ECF No. 108.)  Plaintiffs rely on testimony from Haimes to establish the following facts, to which Defendants responded (ECF No. 111).

*Training Classes.*  Dino Palmieri Salons set up a payment structure under which trainees received a lump-sum bonus at the end of the class upon graduation. (ECF No. 108-1, PageID #1260.)  That bonus was a set amount not tied to the number of hours a trainee spent in the classes.  (*Id.*)  Further, Defendants capped the number of hours trainees worked in the salon so they would not be eligible for coverage under the Affordable Care Act or other benefits.  (*Id.*, PageID #1261.)  For benefits purposes, Defendants did not include time spent in training sessions, which Haimes described as an unintentional oversight on her part.  (*Id.*, PageID #1262.)  By the time Defendants paid the bonus, trainees had not received compensation in multiple pay periods for time spent in the training classes.  (*Id.*, PageID #1263.)  Defendants concede that these facts are undisputed, referencing an email exchange among

counsel (ECF No. 18-5) and earlier briefing on conditional certification. (ECF No. 111, PageID #1272–74.)

*Pay Deductions.* Haimes testified that deductions for products included additional amounts for overhead beyond the cost of the products. (ECF No. 108-1, PageID #1258.)

*Commissions.* Haimes testified that paychecks did not include information advising employees how their commissions were calculated. (*Id.*, PageID #1257.) She added that Dino Palmieri Salon's software could generate reports showing the calculation of commissions, but no stylist ever requested such a report. (*Id.*) Again, Defendants largely concede that these facts are not new. (ECF No. 111, PageID #1275–76.)

Beyond providing their clarifications and arguments in response (*see generally* ECF No. 111), Defendants attached a number of materials. Most of these were previously filed. (ECF No. 111-1; ECF No. 111-2.) Additionally, Defendants attached two authorities, one from the Internal Revenue Service (ECF No. 111-3) and a summary judgment ruling from the Southern District of Ohio (ECF No. 111-4).

## ANALYSIS

As a threshold matter, the parties sharply dispute the legal standard governing class certification under Rule 23. Based on its independent review, and with the benefit of the parties' respective briefs and arguments, the Court sets out the standard that it determines governs.

Due process protects an individual's right "to have his own day in court" and affords litigants the right to participate in and control lawsuits affecting their

interests.  *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846–47 (1999) (citations omitted); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428–29 (1982).  A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979).  Because it binds absent class members to judgments in actions in which they did not participate, and about which they may not even be aware, representative litigation violates due process unless the person seeking to proceed on behalf of a class demonstrates compliance with all the requirements of Rule 23.  *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *Hansberry v. Lee*, 311 U.S. 32, 42 (1940).

Formerly, a court was foreclosed from inquiry into the merits of the case at the class certification stage.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  However, "[r]ecent Supreme Court precedent clearly holds that 'plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Rikos v. P&G*, 799 F.3d 497, 527–28 (6th Cir. 2015) (Cook, J., dissenting) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014)).  Under this more recent authority, a court may certify a class only where the plaintiff presents "evidentiary proof" sufficient to withstand "rigorous analysis" under Rule 23.  *Comcast*, 569 U.S. at 33.  Rule 23's "rigorous analysis" more often than not "will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350–51.

13

In short, the Supreme Court now recognizes that the merits may be considered under Rule 23 to the extent relevant to determining whether the prerequisites for class certification are satisfied. *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).  A district court may not conduct "free-ranging merits inquiries at the certification stage." *Id.*  But Rule 23 is not a pleading standard, and determining whether the plaintiffs have carried their burden at class certification "generally involves considerations that are enmeshed in the factual and legal issues comprising the[ir] cause of action." *Dukes*, 564 U.S. at 351 (quoting *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)).  Because this standard requires evidentiary proof for class certification, the Court first determines the record and Defendants' motion to strike.

## I. Motion to Strike

The parties submitted multiple competing and overlapping evidentiary materials from Fry-Izworsky.  Although she provided an affidavit in support of Plaintiffs' motion for class certification (ECF No. 54-1), Defendants do not move to strike that affidavit, instead directing their motion to two previous ones (ECF No. 6-5; ECF No. 40-1.)  Defendants make two arguments in support of their motion to strike.  Neither has merit.

First, Defendants attack the "ultimate facts and conclusions of law" they contend Fry-Izworsky makes in these two affidavits.  (ECF No. 79, PageID #1070.)  Without question, such testimony is improper.  But the two categories of specific statements Defendants challenge do not implicate this evidentiary rule.  (*Id.*, PageID #1071–72.)  One category relates to matters about which Fry-Izworsky based

14

statements in her affidavit on certain assumptions counsel asked her to make; the other to statements about which she lacks personal knowledge.  Obviously, the latter do not present proper evidence, and the Court will disregard any such statement.  As for the former, Fry-Izworsky's statements based on particular assumptions or selective facts go to the weight of the evidence, not its admissibility.

Second, Defendants argue that, because Fry-Izworsky is not a lawyer, statements in her affidavit that certain pay practices caused employees to earn less than the minimum wage are not admissible.  (*Id.*, PageID #1070.)  Fair enough.  But Fry-Izworsky's statements involve basic math based on some specialized knowledge and familiarity with the particular pay practices at issue.  Whether those practices result in a legal violation presents a separate question to which her affidavit does not speak.

Additionally, the Court denies the motion to strike for another reason.  Over the life of this matter, the record shows that Plaintiffs and Defendants have each submitted competing evidentiary materials from Fry-Izworsky.  Plaintiffs tendered another affidavit with their motion for class certification (ECF No. 54-1), which contains some of the same facts in the two earlier affidavits that Defendants do not challenge.  Defendants oppose class certification with a declaration of their own from Fry-Izworsky.  (ECF No. 61-1.)  Also, the parties each submit and rely on excerpts of her deposition testimony.  (ECF No. 75-1; ECF No. 111-1.)  In this way, Defendants' motion to strike is self-serving and seeks to create an unfairly one-sided presentation of evidence from this witness.

With respect to Fry-Izworsky, the Court finds that the multiple sources of evidence on which the parties rely greatly undermine her credibility.  She tells Plaintiffs one thing in an affidavit, then qualifies it in a declaration for Defendants. And her deposition testimony bears this dynamic out as well.  While the Court will not disregard her evidence and testimony in its entirety, the Court takes it with a grain of salt and discounts it.

Given the parties' competing evidentiary submissions regarding Fry-Izworsky, broader questions arise about the proper record for class certification under the governing standard.  In light of the parties' supplements to the record (ECF No. 108; ECF No. 111), the Court will evaluate the entirety of the record in conducting the rigorous analysis Rule 23 demands.  As a formal matter, Defendants submitted additional materials already in the record for consideration (ECF No. 111-1), and the Court sees no reason not to consider them or any other reliable matters in the record. Because of the malleability of Fry-Izworsky's testimony in its various forms, the Court exercises its discretion not to hold an evidentiary hearing, finding that it would not materially alter the evidentiary record on class certification.  Further, in the Court's view, additional testimony from Fry-Izworsky would only compound the evidentiary complications attending her credibility and offer little more of value in evaluating the pending motion for class certification.  Finally, the Court finds that the parties' briefs and the supplemental briefing they submitted provide an ample record regarding their respective positions on class certification, making oral

16

argument an additional burden or expense that will not materially aid resolution of the motion.

## II.     Rule 23

To obtain class certification, Plaintiffs must prove that they satisfy the four procedural requirements in Rule 23(a) and at least one requirement in Rule 23(b). *Comcast*, 569 U.S. at 33.  In this case, as in many cases seeking class certification, the inquiries under Rule 23(b) regarding predominance and superiority are determinative.  Therefore, the Court directs its attention there.

### II.A.  Predominance

If the prerequisites for class certification under Rule 23(a) are met, a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  For evaluating predominance and superiority, the Rule identifies a non-exclusive list of four considerations.  As relevant here, those considerations with particular salience involve "the class members' interests in individually controlling the prosecution or defense of separate actions" and "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A) & (D).

"[A] key purpose of the predominance requirement is to test whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Plaintiffs in class actions must demonstrate that they can prove through common evidence that a defendant's actions injured all class members.  *In re Rail Freight Fuel Surcharge Antitrust Litig.—MDL No. 1869*, 725 F.3d 244, 252 (D.C. Cir. 2013).  Moreover, that common

17

evidence must establish that the class members suffered the same injury.  *Id.*  In other words, to find predominance, common questions must not only exist, they must also represent a significant aspect of the case capable of resolving the questions for all class members in a single adjudication.

"While determining the *amount* of damages does not defeat the predominance inquiry, a proposed class action requiring the court to determine [the] individualized *fact* of damages does not meet the predominance standards." *Gonzales v. Comcast Corp.*, No. 10-cv-01010, 2012 WL 10621, at \*18 (E.D. Cal. Jan. 3, 2012) (citations omitted).  In this way, the predominance requirement "prevents the class from degenerating into a series of individual trials." *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 294 (N.D. Ohio 2007).  In conducting this analysis, courts "inquire into the substance and structure of the underlying claims without passing judgment on their merits." *Rodney v. Northwest Airlines, Inc.*, 146 F. App'x 783, 786 (6th Cir. 2005) (quotation omitted).

In each of the five classes Plaintiffs seek to certify, Plaintiffs fail to carry their burden of demonstrating that common questions predominate over individual issues. Adjudicating liability for those in the Minimum Wage Prompt Pay Class and the Prompt Pay Class turns on whether the pay practices Plaintiffs challenge caused class members to fall below the minimum wage.  But the record demonstrates that answering that question turns on facts specific to individual employees.  The deductions and other practices at issue may result in some employees receiving less

18

than the minimum wage, while others remained above that floor.  Accordingly, the questions at issue are not appropriate for resolution through the class device.

Similarly, the Company Shop Class depends on the individualized facts and circumstances attending the claims of various class members.  Some worked on an hourly basis, others on commission, and the method for computing net sales varies case-by-case.  These facts and circumstances also apply to the Breach of Contract Class and show that individualized determinations present the hallmark of Plaintiffs' claims—not class-wide adjudication.

Finally, an additional issue precludes certification of the Fraud Claim Class.  Generally, fraud requires reliance on alleged misrepresentation.  The record demonstrates that, to the extent Defendants made common representations, individual employees acted in response to those representations differently.  Some did not rely on the representations at issue at all; others did.  Accordingly, this case does not present facts and circumstances where certification of a class alleging fraud is appropriate.  *See, e.g.*, *Meta v. Target Corp.*, No. 4:14 CV 832, 2016 WL 5076089, at *3–4 (N.D. Ohio Sept. 20, 2016).

Against this backdrop, the considerations set forth in Rule 23(b)(3) lead the Court to find that common questions do not predominate over individual issues.  Individual litigants have a due-process right to control litigation affecting their interests and claims.  *See, e.g.*, *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 813 (1985); *Anderson Living Tr. v. WPX Energy Prod., LLC*, 306 F.R.D. 312, 436–37 (D.N.M. 2015).  Different current or former employees will emphasize in litigation

different pay practices, representations, and other facts and circumstances relevant to their particular claims.  *See* Fed. R. Civ. P 23(b)(3)(A).  For example, some may prefer to emphasize the method for calculation of net pay while others focus on calculation of bonus payments.  In any case, the individual issues predominate over common questions.  Given the number of individual issues within each proposed class, the Court finds that the likely difficulties in managing a class action, including discovery, motion practice, and trial of the case, weigh against a finding of predominance.  *See id.* 23(b)(3)(D).

At bottom, Plaintiffs have not carried their burden of showing that common questions predominate.  They argue, for example, that whether Defendants violated Sections 4111.03 and 4111.14 of the Ohio Revised Code predominates over all other questions.  (ECF No. 54, PageID #796; *see also id.*, PageID #798; *id.*, PageID #808.)  This conclusory argument proceeds at too high a level of generality without sufficient—or any—specificity that supports such a claim on the record before the Court.

## II.B.  Superiority

In addition to predominance, Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Even if Plaintiffs carried their burden of demonstrating that common questions predominate, rigorous analysis under Rule 23 still requires consideration of "whether any alternative methods exist for resolving the controversy and whether the class action method is in fact superior."  *Ealy v. Pinkerton Gov't Servs.*, 514 F. App' x 299, 308 (4th Cir. 2013) (citation omitted).  This

analysis seeks to determine whether the burdens and costs of a class action justify certification given the alternatives.

Defendants argue that the fee-shifting statutes under which Plaintiffs bring their claims foreclose a showing of superiority.  This argument goes too far.  In *Reeb v. Ohio Department of Rehabilitation & Correction, Belmont Correctional Institution*, 435 F.3d 639, 651 (6th Cir. 2006), the Sixth Circuit recognized that Title VII's fee-shifting provision might make individual suits more likely, but ultimately rested its ruling vacating a district court's ruling certifying an injunction class under Rule 23(b)(2) on both the individualized nature of damages and the ability of employees to pursue individual actions for damages.  It is not clear that the court's analysis would translate to a Rule 23(b)(3) class action for damages.  None of the other cases on which Defendants rely for this argument have controlling weight.

Although class actions generally, and superiority in particular, focus on the problem of small recoveries, the record here provides little evidence from which the Court can determine whether this case presents that issue.  Put another way, class actions seek to allow individuals whose particular claims might be so small financially that they are not worth pursuing to vindicate their rights.  From the record here, however, the Court cannot tell whether the claims of class members might be worth a few hundred dollars each, assuming Plaintiffs can prove their claims, or tens of thousands of dollars apiece.  In the latter scenario, class litigation might well not be superior.  But Plaintiffs have the burden of proving superiority, and they did not do so.

In addition to the factors specified in Rule 23(b)(3) already discussed, one other factor, "the extent and nature of any litigation concerning the controversy already begun by or against class members," merits a brief mention.  Fed. R. Civ. P. 23(b)(3)(B).  This consideration cuts in both directions.  On the one hand, no other litigation is pending, suggesting that a class action may be superior.  On the other hand, the absence of other pending litigation suggests a lack of interest on the part of other current or former employees in pursuing the claims.

To the extent it is desirable to concentrate litigation of the claims and practices involved in this case in a particular forum, other procedural litigation rules will achieve that result.  *See* Fed. R. Civ. P. 23(b)(3)(C).  In particular, and as relevant to the superiority inquiry, Plaintiffs pursue their claims as a collective action.  Allowing individual employees to opt-in to participate in this litigation addresses any problem of small recovery without the burdens to the parties or the Court of managing class litigation.  For all these reasons, the Court finds that Plaintiffs have not carried their burden of showing that a class action presents the superior method for adjudication of their claims.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to strike (ECF No. 79) and, based on the rigorous analysis that Rule 23 requires, **DENIES** Plaintiffs' motion for class certification (ECF No. 54).

**SO ORDERED.**

Dated:  October 15, 2021

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio